NEAL S. SALISIAN, SBN 240277
neal.salisian@salisianlee.com
GLENN R. COFFMAN, SBN 305669
glenn.coffman@salisianlee.com
PRISCILLA Y. CHANG, SBN 337810
priscilla.chang@salisianlee.com
**SALISIAN | LEE LLP**
550 South Hope Street, Suite 750
Los Angeles, California 90071-2924
Telephone:  (213) 622-9100
Facsimile:  (800) 622-9145

MICHELLE A. CHIONGSON (SBN 221740)
michelleac@balboacapital.com
MARISA D. POULOS (SBN 197904)
marisa.poulos@balboacapital.com
**BALBOA CAPITAL CORPORATION**
575 Anton Boulevard, 12th Floor
Costa Mesa, California 92626
Tel: (949) 399-6303

Attorneys for Plaintiff
BALBOA CAPITAL CORPORATION

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALBOA CAPITAL CORPORATION, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>VELOCITY TRUCKING, LLC, a Texas limited liability company; and LAURA A. ROCHA, an individual,<br><br>Defendants. | Case No. 8:23-cv-01455-FWS-KES<br><br>[Assigned to the Hon. Fred W. Slaughter]<br><br>**BALBOA CAPITAL CORPORATION'S APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS**<br><br>Complaint Filed:   August 9, 2023<br>Trial Date:            None |

TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 14, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10D of the Ronald Reagan Federal Building and United States Courthouse, located at 411 West 4th Street, Santa Ana, California 92701-4516, the Honorable Fred W. Slaughter presiding, plaintiff Balboa Capital Corporation ("Balboa" or "Plaintiff") will, and hereby does, apply for an entry of default judgment pursuant to Federal Rules of Civil Procedure Rule 55 and Local Rules 55-1, 55-2, and 55-3, against defendants Velocity Trucking, LLC, a Texas limited liability company ("Velocity Trucking"), and Laura A. Rocha, an individual ("Rocha") (collectively, "Defendants"), for a judgment amount of **$164,854.83**.

PLEASE TAKE FURTHER NOTICE that Balboa seeks a default judgment against Defendants in the total amount of $164,854.83, as Balboa has established (a) a sum certain due and owing by Defendants to Balboa; (b) pursuant to the Equipment Financing Agreement and the Business Loan Agreement entered into by Defendants and Balboa; (c) that Defendants are not in military service and are neither a minor or incompetent person; and (d) costs and attorneys' fees are properly awardable.

PLEASE TAKE FURTHER NOTICE that this motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the supporting declarations of Priscilla Y. Chang and Don Ngo, and the exhibits attached thereto, the pleadings and papers filed in this action, and upon such further briefing, authorities, and argument submitted to the Court prior to, or during, the hearing on this matter.

//
//
//
//

| | | |
|---|---|---|
| 1 | DATED: October 31, 2023 | SALISIAN | LEE LLP |
| 2 | | |
| 3 | | By: _____ |
| 4 | | Neal S. Salisian |
| | | Glenn R. Coffman |
| 5 | | Priscilla Y. Chang |
| 6 | | |
| 7 | | Attorneys for Plaintiff |
| | | BALBOA CAPITAL CORPORATION |

**TABLE OF CONTENTS**

I. INTRODUCTION AND RELEVANT FACTS ................................................... 1

II. LEGAL ARGUMENT .......................................................................................... 3

   A. Plaintiff Will Be Highly Prejudiced If Its Default Judgment Application Is Denied. ................................................................................................................... 4

   B. Plaintiff Has A High Likelihood Of Success On The Merits Of Its Substantive Claims And Its Complaint Is Sufficiently Pled. ................................. 5

   C. The Sum Of Money At Stake Favors An Entry Of A Default Judgment. ....... 7

   D. There Are No Material Facts That Are Reasonably In Dispute ...................... 8

   E. Defendants' Defaults Are Not The Result Of Excusable Neglect. ................ 10

   F. Policy Concerns Favor Default Judgment In This Matter. ........................... 12

   G. Plaintiff Has Proven Its Damages. ................................................................ 12

III. CONCLUSION .................................................................................................. 14

# TABLE OF AUTHORITIES

CASES

*Acoustics, Inc. v. Trepte Constr. Co.*,
   14 Cal. App. 3d 887, 916 (1971)...................................................................5

*Draper v. Coombs*,
   792 F.2d 915, 924 (9th Cir. 1986)................................................................10

*Educational Serv., Inc. v. Maryland State Board for Higher Education*, 710 F.2d
   170, 176 (4th Cir. 1983).............................................................................10

*Eitel v. McCool*,
   782 F.2d 1470, 1471-72 (9th Cir. 1986) ................................................4, 10

*Geddes v. United Fin. Group*,
   559 F.2d 557, 560 (9th Cir. 1977)..............................................................5, 8

*Landstar Ranger, Inc. v. Parth Enters, Inc.*,
   725 F.Supp.2d 916, 921 (C.D. Cal. 2010) ....................................................8

*McKnight v. Webster*,
   499 F.Supp.420, 424 (E.D. PA 1980) .........................................................10

*O'Connor v. State of Nevada*,
   27 F.3d 357, 364 (9th Cir. 1994)................................................................10

*Pena v. Seguros La Comercia, S.A.*,
   770 F.2d 811, 814 (9th Cir. 1985)...............................................................11

*Penpower Tech, Ltd.*,
   627 F.Supp.2d at 1093 ................................................................................12

*PepsiCo, Inc. v. Cal. Sec. Cans*,
   238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002) ............................................4, 5

*Reichert v. Gen. Ins. Co.*,
   68 Cal. 2d 822, 830 (1968).............................................................................5

*Shanghai Automation Instrument Co. Ltd. v. Kuei*,
   194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) ................................................11

*Walters v. Statewide Concrete Barrier, Inc.*,
   No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ........... 7

STATUTES

Civ. Code §§ 1620, 3300 ................................................................................................ 5

Fed. R. Civ. P. 55 .......................................................................................................... 3

RESTATEMENT 2d. CONTRACTS § 235(2) ............................................................. 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND RELEVANT FACTS

Plaintiff Balboa Capital Corporation ("Balboa" or "Plaintiff") submits the instant Application for Default Judgment against defendants Velocity Trucking, LLC, a Texas limited liability company ("Velocity Trucking"), and Laura A. Rocha, an individual ("Rocha") (collectively, "Defendants"), as requested by this Court.  [*See* Dkt. 22.][1]

This action involves a claim for damages by Balboa against both Defendants for the breach of the written Equipment Financing Agreement No. B425241-000 (the "EFA"), and the breach of the corresponding personal guaranty of that agreement.  [*See* Declaration of Don Ngo ("Ngo Decl."), ¶3, Exh. A.]

Specifically, Balboa, on the one hand, and Velocity Trucking and Rocha, on the other, entered into the EFA on or about October 24, 2022.  [*See* Ngo Decl., ¶3.] Under the terms of the EFA, Balboa loaned to Velocity Trucking a principal sum of $112,900.00, in order to finance equipment for its business (the "Collateral").  [*See id.*, Exh. A.]

Concurrent with the execution of the EFA, and in order to induce Balboa to enter into the EFA with Velocity Trucking, Rocha personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA (the "Guaranty").  [*See id.*, ¶4.]  Balboa relies on such Guaranty to agree to finance equipment for Velocity Trucking's business. [*See id.*]

Under the EFA, Velocity Trucking was required to make sixty (60) monthly payments of $2,672.05, beginning on November 22, 2022.  [*See id.*, ¶5.]  The last

---

[1] Balboa previously filed its First Request for Clerk to Enter Default against Defendants on October 4, 2023 ("First Request").  [*See* Dkt. 20.]  In response, the Clerk of this Court entered default against each of the defendants on October 6, 2023.  [*See* Dkt. 21.]  On October 20, 2023, the Court ordered Balboa to show cause as to why this action should not be dismissed for lack of prosecution, in writing, no later than November 2, 2023.  [*See* Dkt. 22.]

1
APPLICATION FOR DEFAULT JUDGMENT
CASE NO. 8:23-cv-01455-FWS-KES

payment received by Balboa was credited toward the payment due for April 22, 2023.  [*See id.*, Exh. B.]  Therefore, on May 22, 2023, Velocity Trucking breached the EFA, and Rocha breached the Guaranty, (1) by failing to make the monthly payment due on that date, and (2) by failing to make the monthly payment due for the following month on June 22, 2023, and thus, both have remained continuously in default.  [*See id.*]

At the time of Defendants' default, in addition to the late charges in the sum of $1,923.88, there remained fifty-four (54) monthly payments in the amount of $2,672.05, due to Balboa, plus the outstanding payment due for May 22, 2023, for a total of **$148,886.63** (total of 55 payments of $2,672.05, plus $1,923.88).  [*See id.*, ¶6.]  Defendants have since failed to make further payments.  [*See id.*]

In addition, based on the principal amount due of $148,886.63, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from May 22, 2023 (the date of breach), to December 14, 2023, the date noticed for the hearing of this Application for Default Judgment ("Default Application"), for a total interest amount of $8,402.74, accruing at a rate of $40.79 per day, until the date of Judgment.  [*See id.*, ¶7; *see also* Declaration of Priscilla Y. Chang ("Chang Decl."), ¶¶3-4.]

Pursuant to Paragraph 20 of the EFA, Balboa is entitled to recover its costs and expenses incurred in enforcing the EFA, including attorneys' fees, from Defendants.  [*See* Chang Decl., ¶5, Exh. A; *see also* Bill of Costs.]  Balboa has incurred $987.73, in recoverable costs.  [*See* Chang Decl., ¶5.]  The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of $6,577.73.  [*See id.*]

Balboa's Default Application satisfies the procedural requirements of Local Rule 55-1 and 55-2, and Federal Rule of Civil Procedure 55(b).  Balboa filed its Complaint and case-initiating documents on August 9, 2023.  [*See* Dkts. 1-4.]  Velocity Trucking and Rocha were both properly served August 15, 2023, pursuant

to Federal Rule of Civil Procedure 4. [*See* Dkts. 10-11.] On October 4, 2023, Balboa filed its First Request for Clerk to Enter Default against Defendants ("First Default"), and the Clerk of the Court entered the default against each of the defendant on October 6, 2023. [*See* Dkts. 20-21.] Neither Defendant is a minor or an incompetent person, nor is either Defendant currently in the military service or otherwise exempt from a default judgment under the Servicemembers Civil Relief Act. [*See* Chang Decl., ¶2, Exh. C.]

As set forth below, a default judgment should be entered against each of the Defendants since Balboa satisfies all seven factors under *Eitel*. Moreover, Balboa has adequately proven its damages. Thus, Balboa respectfully requests that this Court grant its request for a default judgment against Defendants in the amount of **$164,854.83**.

## II.     LEGAL ARGUMENT

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," the Court may enter a judgment of default upon application by the plaintiff after an entry of default. *See* Fed. R. Civ. P. 55. Local Rule 55 sets forth procedural requirements that must be satisfied by a party moving for default judgment. Balboa's Application satisfied those requirements.

Here, Balboa filed its Complaint and case-initiating documents on August 9, 2023. [*See* Dkts. 1-4.] Defendants were properly served pursuant to Federal Rule of Civil Procedure 4, on August 15, 2023. [*See* Dkts. 10-11.] Balboa filed its request for entry of clerk's default for failure to respond or appear on October 4, 2023, and the clerk entered the defaults of each of Defendants on October 6, 2023. [*See* Dkts. 20-21.] Neither Defendant is a minor or incompetent person, nor is either Defendant currently in the military service or otherwise exempt from default judgment under the Servicemembers Civil Relief Act. [*See* Chang Decl., ¶2, Exh. C.]

When deciding whether to enter default judgment, courts in the Ninth Circuit are guided by seven factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). A plaintiff need not prove that all seven factors weigh in its favor, as courts *may* consider these factors in their discretion on whether to enter a default judgment. *See id.*

Here, the underlying facts of this action prove that all seven of the *Eitel* factors are in Balboa's favor, and support the entry of default judgment.

### A.   **Plaintiff Will Be Highly Prejudiced If Its Default Judgment Application Is Denied.**

A situation in which a plaintiff will be without any other recourse or recovery should its default judgment application be denied qualifies as prejudice. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002).

Here, Balboa has submitted its Application for Default Judgment as a last resort due to Defendants' deliberate unwillingness to accept responsibility for its actions or even acknowledge Balboa's allegations. The fact remains that Balboa financed equipment for Defendants in the amount of $112,900.00, with Defendants agreeing to make sixty (60) monthly payments of $2,672.05, for which fifty-four (54) payments of $2,672.05, plus the outstanding payment due for May 22, 2023, and late payments in the amount of $1,923.88, for a total of $148,886.64 (total of 55 payments of $2,672.05, plus $1,923.88), still remain due to Balboa. [*See* Ngo Decl., ¶¶3-5.]

Balboa has made demands for its monies from Defendants and under the Guaranty, all of which Defendants have failed to pay back. [*See* Ngo Decl., ¶8.]

Balboa filed its Complaint in this action to recover the monies owed to it, but Defendants have been unwilling to participate in or otherwise acknowledge the litigation. Balboa's Application for Default Judgment is its final option for recovery, and without an entry of default judgment, Balboa will be prejudiced and denied the right to judicial resolution of the claims presented. *See PepsiCo*, 238 F.Supp.2d at 1177.

Moreover, if Balboa's Application for Default Judgment is denied, it will suffer a significant loss due to no fault of its own, and Defendants will obtain a significant windfall in the amount of $164,854.83. Not only will Defendants' deliberate nonaction and stalling technique be unjustly rewarded, but Balboa's procedurally-proper demands for return of its monies through the proper channels available to it in the court system will effectively be penalized.

Thus, Balboa will suffer substantial prejudice should its Application for Default Judgment be denied, as it has no other recourse, and this factor thus supports default judgment.

### B. **Plaintiff Has A High Likelihood Of Success On The Merits Of Its Substantive Claims And Its Complaint Is Sufficiently Pled.**

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Courts often consider the second (merits of the claim) and third (sufficiency of the complaint) *Eitel* factors together. *See PepsiCo.*, 238 F.Supp.2d at 1175.

The elements for breach of contract are (1) existence of a contract, (2) performance by the plaintiff of its obligations under the contract, (3) breach of the contract by the defendant, and (4) resulting damages proximately caused by the defendant's breach of contract. *See Reichert v. Gen. Ins. Co.,* 68 Cal.2d 822, 830 (1968); *see also Acoustics, Inc. v. Trepte Constr. Co.,* 14 Cal.App.3d 887, 916

(1971); see also Civ. Code §§ 1620, 3300; RESTATEMENT 2d. CONTRACTS § 235(2).

All of those elements are easily met. Specifically, Balboa, on the one hand, and Velocity Trucking and Rocha, on the other, entered into the EFA, under which Balboa loaned to Velocity Trucking the principal sum of $112,900.00, in order to finance equipment for Velocity Trucking's business. [See Ngo Decl., ¶3, Exh. A.]

Concurrent with the execution of the EFA, and in order to induce Balboa to enter into the EFA with Velocity Trucking, Rocha personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA (the "Guaranty"). Balboa relies on such Guaranty to agree to loan Velocity Trucking to finance equipment for its business. [See id., ¶4.]

Under the EFA, Velocity Trucking was required to make sixty (60) monthly payments of $2,672.05, beginning on November 22, 2022. [See id. at ¶5, Exh. A.] The last payment received by Balboa was credited toward the payment due for April 22, 2023. [See id.] Therefore, on May 22, 2023, Velocity Trucking breached the EFA, and Rocha breached the Guaranty, (1) by failing to make monthly payment due on that date, and (2) by failing to make the monthly payment due for the following month on May 22, 2023, and thus, both have remained continuously in default. [See id.]

At the time of Defendants' default, in addition to the late charges in the sum of $1,923.88, there remained fifty-four (54) monthly payments in the amount of $2,672.05, due to Balboa, plus the outstanding payment due for May 22, 2023, for a total of $148,886.63 (55 payments of $2,672.05, plus $1,923.88). Defendants have made no further payments. [See id., ¶6.]

In addition, based on the principal amount due of $148,886.63, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from May 22, 2023 (the date of breach), to December 14, 2023 (the date

noticed for the hearing of this Default Judgment Application), for a total interest amount of $7,402.74, accruing at a rate of $40.79 per day, until the date of Judgment. [*See* Ngo Decl., ¶7; *see also* Chang Decl., ¶¶3-4.]

Pursuant to Paragraph 20 of the EFA, Balboa is entitled to recover its costs and expenses incurred in enforcing the EFA, including attorneys' fees, from Defendants. [*See* Chang Decl., ¶5, Exh. A; *see also* Bill of Costs.] Balboa has incurred $987.73, in recoverable costs. [*See* Chang Decl., ¶5.] The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of $6,577.73. [*See id*.]

There is no doubt, and it cannot be disputed that: (1) Balboa and Defendants entered into the EFA; (2) Defendants received the subject equipment as financed by Balboa; (3) Defendants ceased making payments pursuant to the EFA; and (4) Balboa has suffered damages due to Defendants' continued nonpayment. As such, there is a substantially high likelihood of success on the merits in favor of Balboa. In fact, there is no known defense to any of these material facts.

**C.     The Sum Of Money At Stake Favors An Entry Of A Default Judgment.**

As a general rule, courts factor the sum of money at stake on a case-by-case basis, and in relation to the other factors influencing whether to enter default judgment. *See Eitel*, 782 F.2d at 1472 (default judgment was denied where plaintiff was seeking $3 million in damages *and* the parties disputed material facts). This requires the court to assess whether the recovery sought is proportional to the harm caused by defendant's conduct. *See Walters v. Statewide Concrete Barrier, Inc.*, No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted").

In *Penpower Tech, Ltd. v. S.P.C. Tech.*, 627 F.Supp.2d 1083 (N.D. Cal. 2008), despite reasoning that plaintiff's request for $677,075.37 in treble damages,

$500,000 in punitive damages, $100,000 in statutory damages, attorneys' fees of $16,497, and costs of $2,005.00 was "speculative" and weighed against default judgment, the court nevertheless granted plaintiff's default judgment.

Here, Balboa seeks compensatory damages pursuant to the EFA in the amount of $148,886.63; prejudgment interest in the amount of $8,402.74 (from the date of breach through the date Balboa's Application has been noticed to be heard), plus $40.79 per day until the date of judgment; statutory attorneys' fees, as fixed by Local Rule 55-3, in the amount of $6,577.73; and costs in the amount of $987.73. [*See* Chang Decl., ¶¶3-5; Bill of Costs.] The damages sought are contractually-based, and arise out of the clear terms and obligations of the EFA; the prejudgment interest was calculated at the statutory rate of ten percent (10%) per annum; and the attorneys' fees requested are fixed by Local Rule 55-3. [*See id.*]

As such, the sum of money sought is reasonable and far from speculative. It is also substantially less than the $3 million sought in *Eitel*, in which this sum, and other factors, weighed in the favor of denying default judgment. And it is also substantially less than the roughly $1.3 million sought in *Penpower Tech*, in which default judgment was granted, despite the sum of money being deemed "speculative."

Thus, the sum of money sought in this action weighs in the favor of granting default judgment, especially in the light of the other seven *Eitel* factors, and due to the certainty and reasonableness of the sum.

### D. There Are No Material Facts That Are Reasonably In Dispute.

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Geddes, supra*, 559 F.2d at 560. Where a plaintiff's complaint is well-pleaded and the defendants make no effort to properly respond, the likelihood of disputed facts is very low. *See Landstar Ranger, Inc. v. Parth Enters, Inc.*, 725 F.Supp.2d 916, 921 (C.D. Cal. 2010).

As thoroughly detailed in Section II.B., *supra*, there are no material facts that are reasonably in dispute. Balboa, on the one hand, and Velocity Trucking and Rocha, on the other, entered into the EFA, under which Balboa loaned to Velocity Trucking the principal sum of $112,900.00, in order to finance equipment for its business. [*See* Ngo Decl., ¶3, Exh. A.]

Concurrent with the execution of the EFA, and in order to induce Balboa to enter into the EFA with Velocity Trucking, Rocha personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA (the "Guaranty"). [*See id.*, ¶4.] Balboa relies on such Guaranty to agree to loan Velocity Trucking to finance equipment for its business. [*See id.*]

Under the EFA, Velocity Trucking was required to make sixty (60) monthly payments of $2,672.05, beginning on November 22, 2022. [*See id.*, ¶5, Exh. A.] The last payment received by Balboa was credited toward the payment due for April 22, 2023. [*See id.*, ¶5.] Therefore, on May 22, 2023, Velocity Trucking breached the EFA, and Rocha breached the Guaranty, (1) by failing to make monthly payment due on that date, and (2) by failing to make the monthly payment due for the following month on May 22, 2023, and thus, both have remained continuously in default. [*See id.*]

At the time of Defendants' default, in addition to the late charges in the sum of $1,923.88, there remained fifty-four (54) monthly payments in the amount of $2,672.05, due to Balboa, plus the outstanding payment due for May 22, 2023, for a total of $148,886.63 (55 payments of $2,672.05, plus $1,923.88). Defendants have made no further payments. [*See id.*, ¶6.]

In addition, based on the principal amount due of $148,886.63, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from May 22, 2023 (the date of breach), to December 14, 2023 (the date noticed for the hearing of this Default Judgment Application), for a total interest

amount of $7,402.74, accruing at a rate of $40.79 per day, until the date of Judgment. [*See* Ngo Decl., ¶7; *see also* Chang Decl., ¶¶3-4.]

Pursuant to Paragraph 20 of the EFA, Balboa is entitled to recover its costs and expenses incurred in enforcing the EFA, including attorneys' fees, from Defendants. [*See* Chang Decl., ¶5, Exh. A; *see also* Bill of Costs.] Balboa has incurred $987.73, in recoverable costs. [*See* Chang Decl., ¶5.] The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of $6,577.73. [*See id*.]

Defendants cannot dispute any of the facts in any way or make any reasonable arguments surrounding any of the material facts in this action. If anything, Defendants' refusal to participate in, or even acknowledge the litigation, is evidence that no such defense exists.

### E.   Defendants' Defaults Are Not The Result Of Excusable Neglect.

Excusable neglect is not found where a defendant who was properly served simply ignores its deadline to respond. *See NewGen, LLC v. Safe Cig, LLC*, 804 F.3d 606, 616 (9th Cir. 2016) (adding that defendant's counsel contacting plaintiff's counsel after default had been entered, did not constitute "excusable neglect"). In fact, courts have required some showing of good faith to find excusable neglect on the part of a defaulted defendant. *See Eitel*, 782 F.2d at 1471-72 (defendant's failure to answer was excusable neglect in light of ongoing settlement negotiations); *see also Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (finding excusable neglect where defendant filed an answer that was technically late, but submitted the same day as the motion for default judgment); *O'Connor v. State of Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (excusable neglect found where defendant has good faith belief the answer was timely); *Educational Serv., Inc. v. Maryland State Board for Higher Education*, 710 F.2d 170, 176 (4th Cir. 1983) (excusable neglect where defendant had appeared in the action and opposed a request for preliminary injunction in which it set forth its defenses); *McKnight v. Webster*, 499 F.Supp.420,

424 (E.D. PA 1980) (excusable neglect where defendant had sought from the court an extension of time to respond, and default judgment was sought in the interim).

Where the defendants "were properly served with the Complaint, the notice of entry of default, as well as papers in support of the instant [default judgment application]," this factor favors entry of default judgment. *See Shanghai Automation Instrument Co. Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001).

Here, Defendants failed to make any showing whatsoever that their unwillingness to participate in the litigation stemmed from, or was in any way due to, excusable neglect. On August 15, 2023, Rocha was properly served via personal service at his home address, as the agent for service of process for Velocity Trucking, and as an individual defendant living at the address. [*See* Dkts. 10-11.] Defendants have not yet made any appearance in the action, and thus, have not made any effort to answer, defend, or otherwise participate, in this action.

As detailed above, courts have found for excusable neglect only in cases in which a defendant makes good faith showing that the defendant attempts to participate in the litigation to address and defend the allegations set forth against the defendant. Declining to respond to a complaint after proper service (even in the case where defendant's counsel contacts plaintiff's counsel after the entry of default), does not warrant a finding of excusable neglect. *See NewGen*, 804 F.3d at 616.

Here, Defendants have failed to acknowledge their wrongdoings and the allegations they face, even in the slightest degree. Instead, Defendants have blatantly ignored Balboa's Complaint and all other papers filed thereafter. Rather, Defendants' course of action in response to Balboa's Complaint, or the apparent lack thereof, is intentional, and thus, would not constitute excusable neglect.

### F. Policy Concerns Favor Default Judgment In This Matter.

Although courts have expressed that as a general rule policy favors decisions on the merits, cases should be decided on the merits only when <u>reasonably possible</u>. *See Pena v. Seguros La Comercia, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985) (emphasis added). The preference for a decision on the merits is not dispositive, and does not preclude a court from granting default judgment. *See Penpower Tech, Ltd.*, 627 F.Supp.2d at 1093 (defendants' failure to respond to a Complaint makes a decision on the merits impractical, if not impossible).

Here, even the policy concerns to decide a case on its merits favor Balboa to grant Balboa's request for a default judgment. As detailed in II.E., *supra*, Defendants have made it abundantly clear that they will not participate in this litigation, or even acknowledge the instant action. Defendants have deliberately chosen a course of action to simply ignore Balboa and its claims against them, including their own liability. Thus, the Court's decision will not be based on the merits of this case since there is no reasonable possibility at this point given Defendants' refusal to participate in this litigation.

Moreover, policy concerns certainly do not weigh in favor of rewarding Defendants for their unwillingness to account for their liability to Balboa, and the extremely prejudicial windfall they would receive should their deliberate silence and stalling techniques be rewarded, at Balboa's expense. *See* Section II.A., *supra*.

### G. Plaintiff Has Proven Its Damages.

Under the EFA, Velocity Trucking was required to make sixty (60) monthly payments of $2,672.05, beginning on November 22, 2022. [*See* Ngo Decl., ¶5.] The last payment received by Balboa was credited toward the payment due for April 22, 2023. [*See id.*] Therefore, on May 22, 2023, Velocity Trucking breached the EFA, and Rocha breached the Guaranty, (1) by failing to make monthly payment due on that date, and (2) by failing to make the monthly payment due for

the following month on May 22, 2023, and thus, both have remained continuously in default. [*See id*.]

At the time of Defendants' default, in addition to the late charges in the sum of $1,923.88, there remained fifty-four (54) monthly payments in the amount of $2,672.05, due to Balboa, plus the outstanding payment due for May 22, 2023, for a total of $148,886.63 (55 payments of $2,672.05, plus $1,923.88). Defendants have made no further payments. [*See id*., ¶6.]

In addition, based on the principal amount due of $148,886.63, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from May 22, 2023 (the date of breach), to December 14, 2023 (the date noticed for the hearing of this Default Judgment Application), for a total interest amount of $7,402.74, accruing at a rate of $40.79 per day, until the date of Judgment. [*See* Ngo Decl., ¶7; *see also* Chang Decl., ¶¶3-4.]

Pursuant to Paragraph 20 of the EFA, Balboa is entitled to recover its costs and expenses incurred in enforcing the EFA, including attorneys' fees, from Defendants. [*See* Chang Decl., ¶5, Exh. A; *see also* Bill of Costs.] Balboa has incurred $987.73, in recoverable costs. [*See* Chang Decl., ¶5.] The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of $6,577.73. [*See id*.]

Altogether, this totals out to $164,854.83 (as of December 14, 2023), calculated as follows:

| | | |
|---|---|---|
| - | Principal owed: | $148,886.63 |
| - | Prejudgment Interest: | $8,402.74 |
| - | Attorney's Fees: | $6,577.73 |
| - | Recoverable Costs: | $987.73 |
| - | **Total** | **$164,854.83** |

//
//

### III.    CONCLUSION

Based on Balboa's Complaint, Default Judgment Application, and all supporting papers, Balboa respectfully requests that the Court grant its Default Judgment Application against Defendants in the total amount of **$164,854.83**.

DATED: October 31, 2023                 SALISIAN | LEE LLP

By: _____
    Neal S. Salisian
    Glenn R. Coffman
    Priscilla Y. Chang

Attorneys for Plaintiff
BALBOA CAPITAL CORPORATION